## Henry Davis v. The State.

1. Confessions. — The literal import of arts. 749 and 750 of the Code of Criminal Procedure would seem wholly to preclude the admission in evidence of a confession not freely made, without compulsion or persuasion. But a different construction of these articles has been established by a series of adjudications which hold a coerced confession to be evidence against an uncautioned prisoner in so far as he, in connection therewith, disclosed facts found to be true and conducive to the establishment of his guilt, — such as the finding of stolen property, and the like. Under this construction it is competent to prove not only the fact that the property was found in consequence of the prisoner's disclosures, but also the disclosures themselves.

2. Same. — But this construction does not go to the extent of admitting in evidence statements of the prisoner other than those directly connected with or explanatory of his verified and inculpatory disclosures. See the opinion in extenso upon this subject, and note the facts in illustration.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. P. F. Edwards.

The indictment charged the appellant with the theft of a horse from Alfred Wade, the owner, on February 10, 1880. The jury found him guilty, and assessed his punishment at five years in the penitentiary.

The animal stolen was a mare, but as the Revised Penal Code uses the word " horse " in its generic sense, no question of variance between the allegation and the proof was raised, as doubtless there would have been had the original Code remained in force.

Wade, the owner of the mare, fastened her up in his stable, and the next morning she was missing, and her colt fastened up in the stable. A rope was also missing. He found some barefooted tracks accompanying the tracks of the mare leading from the stable through and out of the lot. The measure of these tracks was subsequently found to fit the defendant's foot exactly. Wade mustered in two of his neighbors and made immediate pursuit, guided by the trail of his mare and information obtained as they progressed.

After a chase of fifty miles or more they came up with the defendant at a house in Panola County, and an interview ensued between Wade and the defendant. Testifying for the State, Wade was permitted, over objections by the defence, to detail what transpired at this interview. A portion of the colloquy appears in a bill of exceptions, which is embodied in the opinion of this court. The statement of facts discloses that Wade was allowed to testify that the defendant further said that he came to witness's house about midnight, got the rope from the gear-house, climbed into the stable through a hole in the roof, unfastened the door, took out the mare, and put the colt in her place, and then left. . .

The defence introduced two witnesses, but their testimony amounts to nothing.

*W. S. Patton,* for the appellant. ·

*Thomas Ball,* Assistant Attorney-General, and *W. S. Dunham,* for the State.

White, P. J. A single bill of exception was served by defendant upon the trial of this cause, and inasmuch as it raises the only question upon the record here shown us on appeal, we reproduce so much of the bill as may be requisite to a proper understanding of the question.

Omitting formal portions, it proceeds: " The witness, Alfred Wade, owner of the stolen horse, testified that the horse was taken from his stable and lot at night, and that he found barefooted human tracks about the lot and stable, and that a rope was missing the same night; that he had followed the defendant by tracks some miles, and afterwards by information obtained; found him upon the second night after the horse was taken, at a house in Panola County, some forty miles from where the horse had been taken in Nacogdoches County; that he had a warrant for defendant's arrest; did not go into the house where defendant was when

they first arrived there, but held the horses while others went in; shortly afterwards, went into the house, when the following conversation with defendant ensued: Witness said, "You stole my horse; where is it?" Defendant replied that he had not. Witness said, "You stole him, and had just as well tell me all about it. I won't hurt you, or let any one punish you." Defendant's counsel here objected to proof of defendant's statements, *first*, because he was under arrest; and *second*, because he was induced by said promise of protection to make the statement. The witness Wade having further stated that what he was told in that conversation by defendant led to the recovery of the rope and of signs of the mare, which had strayed off; and that defendant took witness to the place and showed him the rope and where he had turned the mare loose, the court overruled the objections of the defendant, and permitted the witness to detail the confessions of defendant, who said he had stolen the mare and rode her without saddle some fifteen or sixteen miles and turned her loose; that he had at the same time taken the rope, which witness identified as his own rope that was missing.

Our statute provides full and complete rules with regard to the admissibility in evidence of the confessions of a defendant, in the following language, viz.: —

" The confession of a defendant may be used in evidence against him, if it appear that the same was freely made, without compulsion or persuasion, under the rules hereafter prescribed." Code Cr. Proc., art. 749.

"Art. 750. The confession shall not be used if, at the time it was made, the defendant was in jail or other place of confinement, nor while he is in custody of an officer, unless such confession be made in the voluntary statement of the accused taken before an examining court in accordance with law, or be made voluntarily after having been first cautioned that it may be used against him, or unless in connection with such confessions he make statement of

facts or circumstances that are found to be true, which con-
duce to establish his guilt, — such as the finding of secreted
or stolen property, or instrument with which he states the
offence was committed.''

If these statutes were before us for the first time for con-
struction, we would not hesitate to say that the inevitable
converse of the language used in art. 749 is that under no
circumstances could a confession not freely made, or made
under compulsion or persuasion, be used in evidence against
a defendant ; in other words,· that the language of the arti-
cle precludes absolutely the idea that a confession not freely
made without compulsion or persuasion could under any
state of circumstances whatsoever be used.   And the rules
prescribed in art. 750 are rules prescribed for such confes-
sions, that is, only those freely made without compulsion or
persuasion.   Such being the plain import of the unambig-
uous language used, we would feel inclined further to hold
that these same rules which would exclude confessions as a
whole, not voluntarily and freely made, would also exclude
any part or portion of such confessions, under the general
principle that the greater always includes the less, and the
whole all its parts.

But these statutes have time and again been before our
courts for construction, and have received an interpretation
which may now, under the rule of *stare decisis,* be consid-
ered as a part of the fixed and settled law of the State.
These decisions go to this extent, that though the confes-
sions were made whilst the defendant was in duress, and
under circumstances showing that they were made even
upon compulsion or under persuasion, and not freely and
voluntarily after the party had been warned or cautioned
that they might be used against him, and though these facts
would exclude the entire confession, yet an exception pre-
vails so far as '' in connection with such confession he make
statement of facts or of circumstances that are found to be
true, which conduce to establish his guilt, such as finding

secreted or stolen property," etc.   When the confession leads to such discoveries or results, then the rule is " that it is admissible to show not only the fact that the stolen property had been traced by means of information received from the prisoner, but also the information or disclosure itself; that is, that the confession would be excluded because not voluntary, except so far as it furnished information by which the property was recovered.   If the property was recovered by means of the information, then it would be admissible to prove not only that fact, but what was said by the prisoner in conveying the information.   But at the same time this would not let in other admissions,. statements, or declarations, if any such there were, not directly connected with or explaining such information.   This is the full extent to which the previous decisions of our courts have gone."   *Selvidge* v. *The State*, 30 Texas, 60 ;. *Warren* v. *The State*, 29 Texas, 369 ; *Strait* v. *The State*,. 43 Texas, 486 ; *Speights* v. *The State*, 1 Texas Ct. App. 551 ; *Berry* v. *The State*, 4 Texas Ct. App. 492 ; *Zumwalt* · v. *The State*, 5 Texas Ct. App. 521.

In taking this view of the law our courts have followed the common law.   Mr. Greenleaf enunciates the doctrine in this language : " But where, in consequence of the information obtained from the prisoner, the property stolen, or the instrument of the crime, or the bloody clothes of the person murdered, or any other material fact is discovered, it is competent to show that such discovery was made conformably to the information given by the prisoner.   The statement of his knowledge of the place where the property or other evidence was to be found, being thus confirmed by the fact, is proved to be true, and not to have been fabricated in consequence of any inducement.   It is competent, therefore, to inquire whether the prisoner stated that the thing would be found by searching a particular place, and to prove that it was accordingly so found ; but it would not be competent to inquire whether he confessed that he con-

cealed it there.   This limitation of the rule was distinctly laid down by Lord Eldon, who said that where the knowledge of any fact was obtained from a prisoner, under such a promise as excluded the confession itself from being given in evidence, he should direct an acquittal ; unless the fact itself proved would have been sufficient to warrant a conviction, without any confession leading to it." Greenl. on Ev., sect. 231 ; *The State* v. *Garvey*, 28 La. An. 925.

" If the prisoner himself produces the goods stolen, and delivers them up to the prosecutor, notwithstanding it may appear that this was done upon inducements to confess, held out by the latter, there seems no reason to reject the declarations of the prisoner, contemporaneous with the act of delivery and explanatory of its design, though they may amount to a confession of guilt ; but whatever he may have said at the same time, not qualifying or explaining the act of delivery, is to be rejected." Id., sect. 232.

Under these rules, we are of opinion that the court erred in permitting the introduction in evidence of the entire confession of the defendant in this case.   Returning to the statement of facts for the details of the confession, which the witness was permitted to relate, we find that he not only stated that defendant told him he did steal the mare, but most of the circumstances detailed in the confession were independent of and not pertinent to or explanatory of the only facts for which the evidence could at all be admitted, viz., information which led to the discovery of the stolen property.

The judgment is reversed and the cause remanded.
*Reversed and remanded.*